```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA    :
                            :
     v.                     :    No. 2:12-cr-00045-wks
                            :
ERIC P. ZUBER,              :
                            :
          Defendant         :
```

## OPINION & ORDER

Defendant Eric P. Zuber is charged with two counts: count one charges him with knowing and willfully conspiring to distribute heroin, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841 (a)(1), 846; count two charges him with knowingly and intentionally possessing with the intent to distribute heroin, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841 (a)(1).  Zuber has filed motions to suppress evidence obtained as a result of a search conducted at his apartment on May 18, 2011, as well as statements he made to law enforcement on May 18, 2011 and June 2, 2011.  For reasons described below, Zuber's motions are denied.

## FACTUAL BACKGROUND

On June 11, 2013, this Court held a hearing on Eric P. Zuber's motions to suppress the search and his statements.

During this hearing, Zuber and Det. Brian LaBarge testified as to the events concerning the relevant search and statements.

Zuber resides at 47 Adams Street, apartment 11, in Burlington, Vermont. *See* Mot. Supp. Search, ECF No. 15 at 1. 47 Adams Street is a multi-level, multi-unit apartment building. *See* Application for Search Warrant with Aff. ("Warrant App."), ECF No. 20-1, Gov't Ex. A ¶ A1. Apartment 11 is located in the building's basement, which is reached by entering an exterior door of the building. A short flight of stairs leads from the exterior door down to a small hallway lined with cabinets. Other than the door to apartment 11, no doors or hallways branch off from the small hallway. *See* Gov't Opp'n to Mots. Supp., ECF No. 20 at 4.

Det. LaBarge was familiar with 47 Adams Street 11 because he had assisted in the execution of a search warrant at the location in December 2010. Zuber was residing at 47 Adams Street, apartment 11 at the time of the 2010 search and was charged with possession of marijuana, cocaine, and depressant, stimulant, and narcotic drugs in violation of Vermont law.

**A. May 2011 Investigation**

During May 2011, Det. Brian LaBarge and other members of the Burlington Police Department worked with a confidential informant ("CI") to arrange several controlled cocaine purchases from a "known individual." *See* Warrant App. ¶ B2. On one

2

occasion during the month of May, a detective witnessed the known individual leave a meeting with the CI and go to 47 Adams Street, but the detective was unable to see which door the individual entered at the property. *Id.* ¶ B3. The known individual completed the purchase with the CI after he returned from 47 Adams Street. The substance that the CI purchased tested presumptive positive for cocaine. *Id.*

On or about May 17, 2011, the CI conducted another controlled cocaine purchases with the known individual. *See id.* ¶ B7. During the second purchase, detectives followed the individual when he left his meeting with the CI. *See id.* According to Det. LaBarge's affidavit, detectives observed the known individual going "directly to Eric Zuber's apartment located at 47 Adams Street #11." *Id.* ¶ B7. Officers informed Det. LaBarge that the known individual entered the hallway near apartment 11 moments before Det. LaBarge arrived on scene during the purchase. Several minutes after he arrived, Det. LaBarge observed the known individual "exiting Zuber's apartment." *Id.* ¶ B8. Det. LaBarge testified that the outer door was left open when the known individual entered, which allowed Det. LaBarge to see part of the hallway. A video taken from outside of 47 Adams Street during this controlled purchase shows the known individual exiting the basement's outer door. *See* Buy Video, Gov't Ex. D.

   B.  **May 2011 Search**

On May 18, 2011, Det. LaBarge applied for and received a warrant from Judge Crawford to search Zuber's apartment. Warrant App. at 7.  Based on his observations of the CI, his training and experience with drug investigations, and his knowledge of Zuber's criminal history, Det. LaBarge asserted probable cause existed that Zuber's apartment would contain evidence of the crime of sale and possession cocaine.  *Id*. ¶ B12.  The warrant authorized a search for:

   1. Any and all forms of cocaine.

   2. Any and all forms of drug paraphernalia to include packaging materials, sclaes and "user" paraphernalia.

   3. Any and all papers, receipts, records, notes, to include phone books, address books, laptops, computers, Ipods, any cell phone numbers, contact information, emails, address books, sent text messages, received text messages, draft text messages, incoming calls, outgoing calls, photographs, and videos contained within and the viewing and recording thereof which are related to the sale and distribution of cocaine.

   4. Any and all forms of money or negotiable instruments or property used or amassed through the distribution of cocaine.

   5. Any locked/unlocked containers and or safes.

Search Warrant, ECF No. 20-1 ¶¶ 1-5.

On May 18, 2011, Det. LaBarge and Burlington Police Department officers executed the search warrant.  Video of May 18 Search ("Search Video"), ECF No. 20-2, Gov't Ex. B.  Zuber was in the shower when the officers entered his apartment.  Det.

4

Merchand immediately seized a pair of shorts that Zuber stood upon when he exited the shower.  The shorts contained suspected heroin and cocaine.  *See* ECF 20-1, Inventory of Property Seized/Received.  As a result of the search, officers seized, among other items, 36 grams of cocaine, 2.9 grams of heroin, marijuana, Suboxone, Methadone, and currency. Gov't Opp'n to Mots. Supp. at 2.

### C. Zuber's Statements

During the search, Det. LaBarge asked Zuber if he would like to speak with him in the hallway.  Zuber testified that, before they entered the hallway, Det. LaBarge referenced Zuber's federal criminal history and indicated that he might be able to help Zuber obtain more lenient treatment if Zuber cooperated. Det. LaBarge denies making any promises to Zuber before entering the hallway.  Det. LaBarge did not turn on his audio recording device until he and Zuber were outside of the apartment.  *See* Audio Recording, ECF No. 20-3, Gov't Ex. C.  Upon entering the hallway, Det. LaBarge informed Zuber that he was not under arrest but nonetheless proceeded to read Zuber his *Miranda* rights.  *Id.*  Zuber told Det. LaBarge that he understood his rights and did not want an attorney but that he wanted to know what Det. LaBarge would do for him if he cooperated.  *Id.*  Det. LaBarge explained that he did not have authority to make any promises but that he would inform the prosecuting office of

5

Zuber's cooperation and the information Zuber provided.  *Id.*  Zuber agreed to cooperate after expressing concerns over his health and a desire for the case to not be prosecuted federally.  *Id.*  Although Zuber admitted to using "dope" an hour before officers arrived, he claimed it did not impact his decision to speak with Det. LaBarge.  *Id.*

Zuber agreed to continue the interview at the police station after the search ended.  He went to the police station with Det. LaBarge, who interviewed him for an additional two hours.  Zuber was not restrained in any way during this interview.  According to Zuber, Det. LaBarge told him that his case would be prosecuted by the State's Attorney and that talking to law enforcement would "cushion his fall."  Det. LaBarge testified that he referenced the State's Attorney because his cases were typically prosecuted in state, not federal, court.  Det. LaBarge also testified that he told Zuber that cooperation might "cushion his fall" because, in his experience, cooperative defendants received favorable treatment.  Zuber returned home after the interview, but Det. LaBarge never promised that Zuber would not be arrested.  Another interview took place on June 2, which gave Zuber the opportunity to expand or add to topics previously discussed on May 18.  Zuber proceeded to provide information regarding local drug dealers

and to disclose that he had handled eleven ounces of cocaine in the preceding half year.

## DISCUSSION

A.  **Suppression of Physical Evidence**

Zuber first moves to suppress the evidence obtained during the search of his apartment.  He argues (1) that the issuing magistrate did not have a substantial basis for finding probable cause; (2) that the warrant application contained a material statement that the detective knew to be false; and (3) that the warrant was insufficiently precise in limiting its scope of items to be seized.

When evaluating the validity of a search warrant, this Court must determine whether the issuing magistrate had a "substantial basis" for finding probable cause.  *Jones v. United States*, 362 U.S. 257, 271 (1960).  Determining whether there is probable cause requires the issuing court to make a "practical, common-sense decision" that "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Probable cause is a "fluid concept" that cannot be reduced "to a neat set of legal rules;" instead it must be determined by a factual analysis of the totality of the circumstances.  *Id.* at 232.  A magistrate's finding of probable cause is given "great deference" by reviewing courts.  *Spinelli v. United States*, 393

U.S. 410, 419 (1969).  In fact, "[a] search based upon a magistrate's determination will be upheld by a reviewing court on less persuasive evidence than would have justified a police officer acting on his own."  *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

In *Gates*, the issuing court found evidence of a probable pre-arranged drug run after police investigation corroborated an informant's tip.  *See* 462 U.S. at 236.  The police investigation included observation of the defendant's flight to Palm Beach and brief stay in a motel, and the defendant's immediate return home.  *See id.*  Based on this information, the Supreme Court concluded that issuing court had a substantial basis for finding probable cause to search for evidence of the alleged drug crime.  *Id.* at 246.

The relevant factors included in Det. LaBarge's warrant application included his knowledge of Zuber's prior federal drug felony, the December 2010 search of Zuber's apartment, and the controlled cocaine purchases from someone who entered the 47 Adams Street basement.  These factors indicated that evidence of the alleged crime of sale and possession cocaine could probably be found at Zuber's apartment.  Under the totality of the circumstances, this Court finds that the issuing court had a substantial basis for finding probable cause to issue a search warrant at Zuber's apartment.

1.  Alleged Misstatements by Det. LaBarge

In his affidavit supporting his application for the search warrant, Det. LaBarge claims that detectives observed the "known individual" going "directly to Eric Zuber's apartment located at 47 Adams Street #11, Burlington, VT." Warrant App. ¶ B6. Zuber argues that this description of where the known individual went was a material misstatement because the detectives only witnessed the known individual at the exterior door to the apartment building instead of the interior door to apartment 11.

There is a "presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). This Court would not grant Zuber's motion to suppress unless he made a substantial preliminary showing that, in his affidavit, Det. LaBarge "knowingly and intentionally, or with reckless disregard for the truth" submitted an allegedly false statement that was "necessary to the finding of probable cause." *Id.* at 155-56. The affidavit's allegedly false statement is necessary to the finding of probable cause if, absent the false statement, the affidavit's remaining parts are insufficient to support a finding of probable cause to issue the search warrant. *United States v. Trzaska*, 111 F.3d 1019, 1027-28 (2d Cir. 1997).

The observation of the known individual going "directly" to Zuber's apartment was essential for establishing apartment 11 as

9

the location of the search. Therefore, this observation was necessary to finding probable cause because, absent the individual going "directly" to Zuber's apartment, the affidavit could not support probable cause to issue the warrant. However, even if the observation was inaccurate, the warrant will not be invalidated if Det. LaBarge did not act "knowingly and intentionally, or with reckless disregard for the truth" when he submitted the affidavit. *See Franks*, 438 U.S. at 171.

Det. LaBarge's statement was not false. His conclusion that the known individual came out of Zuber's apartment was fully justified. But even if that conclusion was false, given the apartment's location, Det. LaBarge did not act with such a deliberate or reckless disregard for the truth. Upon entering the small hallway, there is nowhere else to go other than apartment 11. *See* Search Video. Officers were justified in drawing the conclusion that, after he went through the exterior door, the known individual went "directly" to Zuber's apartment. Warrant App. ¶ B6. Det. LaBarge's statement was not a deliberate falsehood or made with reckless disregard for the truth, and thus the warrant is valid under *Franks*.

    2.   <u>Particularity Requirement</u>

"[T]he particularity requirement guards against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be

10

seized," *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990), and "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977)).  To satisfy the particularity requirement, "the warrant must, while indicating the crime under investigation, specify 'the place to be searched,' and 'the persons or things to be seized.'" *United States v. Villegas*, 899 F.2d 1324, 1335 (2d Cir. 1990) (quoting *Berger v. New York*, 388 U.S. 41, 56 (1967).  The items to be seized must be described "with as much particularity as the circumstances reasonably allow." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992).

The warrant executed at Zuber's apartment was sufficiently particular because it specifically identified the sale and possession of cocaine as the crime under investigation, apartment 11 as the place to be searched, and items related to sale and possession of cocaine as the items to be seized.[1]  Det. LaBarge did not include overly broad items in the search warrant application, but instead included items typically requested by officers conducting a drug investigation.  *See United States v.*

---

[1] The warrant authorized the seizure of cocaine and other drugs, drug paraphernalia, serialized buy money, and other objects typically associated with cocaine sale and possession.  Search Warrant, ECF No. 20-1.

*Washington*, 48 F.3d 73, 78 (2d Cir. 1995) (finding categories of drug-related evidence to be sufficiently particular); *United States v. Young*, 745 F.2d 733, 759, (2d Cir. 1984) ("[T]he agents did all that could reasonably have been expected in drawing up the warrant."). Given the nature of Zuber's alleged narcotics crimes, the items listed in the search warrant were described with sufficient particularity.[2]

    3.   <u>Good Faith Exception</u>

Even if the warrant had been found invalid, the evidence from the search would not be suppressed because the officers acted in good faith. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). For example, a warrant that fails to identify any crime at all could not be relied upon by reasonable officers, and thus the good faith exception would not apply. *See George*, 975 F.2d at 77. The warrant at issue in this case was not clearly invalid, nor was it the result of reckless or dishonest police work. Thus,

---

[2] The officers executing the search were justified in exercising their judgment in determining if a particular item was within the described category. See *Riley*, 906 F.2d at 845.

Zuber has failed to prove that the officers were unreasonable for relying on the warrant.

**B.   Suppression of Statements**

Zuber has also moved to suppress statements made to law enforcement officers on May 18, 2011 and June 2, 2011.  Zuber's argument raises two Constitutional concerns: the Fifth Amendment privilege against self-incrimination and the Due Process Clause of the Fourteenth Amendment.  *See Dickerson v. United States*, 530 U.S. 428, 433 (2000) (explaining relevance of the Fifth and Fourteenth Amendment to confessions).

   1.   *Miranda* Requirements

Police may not interrogate a suspect who has been taken into custody before first warning the suspect "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Even if a statement was voluntarily made, the government's case-in-chief cannot use unwarned confessions if *Miranda* warnings were necessary.  *See Oregon v. Elstad*, 470 U.S. 298, 306 (1985).

*Miranda* warnings advising defendants of their Fifth Amendment rights are required when a defendant is subjected to

"custodial interrogation."  *United States v. Newton*, 369 F.3d 659, 669 (2d Cir. 2004).  Custodial interrogation is any "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda*, 384 U.S. at 444.  A defendant is "in custody" for *Miranda* purposes if "a reasonable person in the defendant's position would have understood himself to be 'subjected to the restraints comparable to those associated with a formal arrest.'"  *United States v. Ali*, 68 F.3d 1468, 1472 (2d Cir. 1995) (quoting *United States v. Mussaleen,* 35 F.3d 692, 697 (2d Cir. 1994)).

    The circumstances surrounding Zuber's statements indicate that he was not "in custody."  First, Det. LaBarge's initial interrogation of Zuber took place at Zuber's apartment building.  Courts "almost universally hold that questioning in a suspect's home is not custodial."  *United States v. Rakowski*, 714 F. Supp. 1324, 1334, 1987 (D. Vt. 1987).  Second, courts tend to not find custody when officers specifically tell an individual that he or she is not under arrest, which is what Det. LaBarge did in this case.  *See id.*  Third, Det. LaBarge's initial interview of Zuber was short in duration.  *See Cruz v. Miller*, 255 F.3d 77, 83 (2d Cir. 2001)(explaining that custodial interrogation is unlikely if a detention is "reasonably perceived as brief") (citing *Berkemer v. McCarty*, 468 U.S. 420, 438 (1984))).  Fourth, Zuber

14

was not handcuffed or physically restrained in any way. For these reasons, Zuber was not "in custody" at the time he made the inculpatory statements, and *Miranda* warnings were not required.[3]

    2.    <u>Voluntariness</u>

Due Process requires a confession to be "the product of an essentially free and unconstrained choice by its maker." *See Shneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). Even if *Miranda* warnings are provided and a valid waiver is obtained, an involuntary statement made in violation of Due Process must be suppressed. *See Mincey v. Arizona*, 437 U.S. 385, 398 (1978); *United States v. Odeh*, 552 F.3d 177, 200 (2d Cir. 2008). The government has the burden of showing, by a preponderance of the evidence, that a defendant's statements are voluntary. *See Colorado v. Connelly*, 479 U.S. 157, 169 (1986).

To determine if a confession is voluntary, a court must determine whether a defendant's will was "overborne" by assessing the "totality of all surrounding circumstances."

---

[3] Even if this Court were to find that Zuber had been subjected to custodial interrogation, Zuber waived his Miranda rights. A suspect can waive his rights if that decision is "voluntarily, knowingly and intelligently" made. *Miranda*, 384 U.S. at 144. To be valid, the waiver must result from a "free and deliberate choice rather than intimidation, coercion, or deception" and "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Although Zuber admitted to drug use prior to his confession, his waiver is still voluntary. *See United States v. Palmer*, 203 F.3d 55, 61 (1st Cir. 2000) (heroin withdrawal symptoms did not invalidate waiver). Nothing in the record indicates that Zuber failed to comprehend the rights Det. LaBarge read to him. *See United States v. Male Juvenile*, 121 F.3d 34, 40 (2d Cir. 1997) (competency despite mental disability).

*Shneckloth*, 412 U.S. at 226.  Among other factors, courts consider: "1) [The] characteristics of the accused, 2) the conditions of the interrogation, and 3) the conduct of law enforcement officials."  *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir. 1988).  If a single factor or combination of factors indicates that a suspect's will was overborne, then "the confession was not . . . free and voluntary."  *Id.* at 902.

When considering individual characteristics, this Court must consider the defendant's "experience and background, together with the suspect's youth and lack of education or intelligence."  *Id.*  Specifically, it is important to consider whether a suspect is a "newcomer to the law, mentally deficient, or unable in the face of a custodial arrest to exercise a free choice."  *United States v. Watson*, 423 U.S. 411, 424-25 (1976).  Zuber's individual characteristics do not indicate that his statements were involuntary.  Zuber is forty-five years old and, although he has health complications and an opiate dependence, there is no indication that he is mentally deficient or unable to exercise free will.  *See* Warrant App. ¶ A1; Audio Recording.  Zuber is also not a newcomer to the law; he has a criminal history that includes a federal drug charge.  Warrant App. ¶ B10.

The conditions of Zuber's interrogations also do not render his statements involuntary.  Zuber was not deprived of food or

sleep, subjected to interviews of great duration, nor was he isolated from family and friends. *See Berghuis v. Thompkins*, 560 U.S. 370, 130 (2010); *Sims v. Georgia*, 389 U.S. 404, 407 (1967). The initial interrogation was held at Zuber's apartment and lasted only thirty minutes. The May 18 interrogation at the police station lasted a couple of hours, after which Zuber returned home. Other indications of voluntariness include the fact that Zuber was not under arrest or otherwise restrained at the time of the interrogations and that he was read his *Miranda* rights. *See United States v. McFarland*, 424 F. Supp. 2d 427, 437 (N.D.N.Y 2006)(explaining that lack of arrest and warnings can indicate voluntariness). The conditions during the interrogations were thus not coercive and did not result in involuntary statements.

    Zuber testified that Det. LaBarge promised, in return for Zuber's cooperation, that Zuber would receive lenient treatment and that his case would be prosecuted by State rather than federal attorneys. The audio recording of the interview in the hallway discredits this testimony. In the audio recording, Det. LaBarge said that he lacked authority to make any promises to Zuber. This recorded statement corroborates Det. LaBarge's testimony at the hearing, "that he made no such promises." The Court finds no promises of leniency were made to Zuber and that the Defendant's statements were entirely voluntary.

**CONCLUSION**

For the reasons stated above, the Court **denies** Zuber's motions to suppress.

Dated at Burlington, in the District of Vermont, this 25th day of July, 2013.

> /s/William K. Sessions III
> William K. Sessions III
> U.S. District Court Judge